288 F.3d 116
 Thomas KILKENNY, in his capacity as a fiduciary with respect to the Plasterers Local 8 Benefit Funds; William Taylor, in his capacity as a fiduciary with respect to the Plasterers Local 8 Benefit Funds, Appellants,
v.
GUY C. LONG, INC.
 No. 00-1396.
 United States Court of Appeals, Third Circuit.
 Argued January 15, 2002.
 Filed May 1, 2002.
 
 COPYRIGHT MATERIAL OMITTED Bruce E. Endy (Argued), Spear, Wilderman, Borish, Endy, Spear & Runckel, Philadelphia, PA, for Appellants.
 Vincent J. Pentima (Argued), Klett, Rooney, Lieber & Schorling, Philadelphia, PA, for Appellee.
 Before SCIRICA, GREENBERG and BRIGHT,* Circuit Judges.
 OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 
 1
 This is a dispute between rival labor unions and an employer over the proper assignment of work under a collective bargaining agreement and the employer's obligation to make contributions to the benefit fund of the union that performed none of the contested work. Despite mandatory arbitration provisions in both the industry-wide collective bargaining agreement and the trust fund agreement, a minority of aggrieved benefit fund union trustees brought suit under the Labor Management Relations Act and the Employee Retirement Income Security Act for an accounting and recovery of contributions allegedly due their fund for work performed by a rival union.[1] Concluding the trust agreements required a majority of the trustees to institute suit, the District Court dismissed this action for lack of standing. We will affirm.
 
 I.
 
 2
 Plaintiff invokes federal jurisdiction under § 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185[2] and under § 502 and § 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132, 1145.[3] Although this matter reflects the underlying tension between the LMRA and ERISA in the collective bargaining context, the applicable law in this particular case is provided by the LMRA.
 
 
 3
 We have appellate jurisdiction under 28 U.S.C. § 1291.
 
 II.
 
 4
 We review the dismissal of an action for lack of standing de novo. Gen. Instrument Corp. of Del. v. Nu-Tek Elecs. & Mfg., Inc., 197 F.3d 83, 86 (3d Cir.1999). We exercise plenary review over legal questions concerning the applicability and scope of an arbitration agreement. Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 53-54 (3d Cir.2001). When a district court interprets contract language, we review under the clearly erroneous standard. Id. But if the district court engages in contract construction, we exercise plenary review. Id.
 
 III.
 
 5
 Plaintiffs Thomas Kilkenny and William Taylor are union trustees for the Local 8 benefit funds,[4] a group of employee benefit plans cosponsored by the Local 8 Operative Plasterers and Cement Masons International Association and a multi-employer bargaining association known as the Master Plasterers Company of Philadelphia, a subdivision of the Interior Finish Contractors Association. Defendant Long, Inc. is a plastering and drywall contracting company who was represented by the Interior Finish Contractors Association for collective bargaining purposes.
 
 
 6
 The multi-employer collective bargaining agreement negotiated between the Local 8 Plasterers Union and the Interior Finish Contractors Association provides that the work of "erection and installation, including cutting and fitting of rigid insulation, including the mechanical fastening of same, as used in the fabrication of (E.I.F.S.) Exterior Insulation Finished System and similar type systems, shall be the work of the plasterers." The agreement requires employers to make contributions of fringe benefits to the Local 8 employee benefit funds for "all employees represented by the Union while the employees are working in the jurisdiction of the Union."[5] When disputes arise between the employer and union concerning "interpretation or application" of the collective bargaining agreement, the agreement mandates arbitration.[6]
 
 
 7
 In December 1998, Long contracted to perform work on a construction project at Downingtown High School in Chester County, Pennsylvania. Part of this project involved fastening rigid foam insulation. Long assigned this work to members of Plasterers Local 8 and to members of a rival union, the Carpenters Union. Both Local 8 and the Carpenters Union believe the mechanical fastening of rigid foam insulation is work that should be performed exclusively by their respective members. Long divided the fastening work, allegedly assigning the "mechanical fastening" of rigid foam insulation to Carpenters Union members, and the "non-mechanical fastening" to Local 8 Plasterers Union members. Long made all required contributions for the mechanical fastening work to the Carpenters Union benefit fund, but none to the Plasterers Union benefit fund, as their members had not performed any of that work.
 
 
 8
 Believing the collective bargaining agreement obligated Long to make benefit contributions for the mechanical foam insulation work to Local 8 — whether or not Local 8 members performed the work — union trustees Kilkenny and Taylor brought suit without the approval of the other four trustees and without pursuing arbitration. After suit was filed, the trustees met and discussed the pending lawsuit. The employer trustees requested the lawsuit be withdrawn, but the union trustees were opposed. A deadlock ensued between the employer trustees and the union trustees.
 
 
 9
 Subsequently the employer trustees sought to have the deadlocked motion arbitrated under LMRA § 302(c)(5) and the Local 8 Pension Plan Trust Agreement.[7] Like the collective bargaining agreement, the Local 8 Pension Plan Trust Agreement provides for arbitration when disputes arise:
 
 
 10
 If the Trustees are unable to agree upon or settle any of the matters arising under the administration of the Fund, the Trustees representing the Employer and the Trustees representing the Union will attempt to agree upon the designation of an impartial arbitrator ... The decision of the arbitrator so agreed upon or appointed by the American Arbitration Association or by the District Court shall be final and binding on all concerned.
 
 
 11
 Notwithstanding these provisions, Kilkenny and Taylor refused to submit the deadlocked dispute to arbitration, contending that as ERISA fiduciaries, they were entitled to bring suit in federal court.
 
 
 12
 The District Court dismissed plaintiffs' action for lack of standing, concluding "the employer appointed trustees had not authorized the lawsuit, and the union trustees cannot act alone in this regard. If, as here, the trustees are deadlocked in any matter of trust administration, the trust agreements provide for an arbitration procedure to resolve the impasse. The union trustees have not invoked the arbitration procedure. Since the union trustees do not presently have standing to bring this action, the complaint is being dismissed." District Court Order, Apr. 4, 2000 (citing Alfarone v. Bernie Wolff Const. Corp., 788 F.2d 76 (2d Cir.1986)). This appeal followed.
 
 IV.
 
 13
 The Local 8 employee benefit funds are employee benefit plans governed by the Labor Management Relations Act and the Employee Retirement Income Security Act. As noted, the LMRA requires that employee benefit funds receiving employer contributions be jointly administered by an equal number of employee and employer representatives. 29 U.S.C. § 186(c)(5)(B). In the event of a deadlock between the trustees, the LMRA requires the employer and employee representatives to "agree on an impartial umpire to decide [the] dispute...." Id.[8]
 
 
 14
 ERISA "protects employee pensions and other benefits by providing insurance ... specifying certain plan characteristics in detail ... and by setting forth certain general fiduciary duties applicable to the management of both pension and nonpension benefit plans." Varity Corp. v. Howe, 516 U.S. 489, 496, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). ERISA fiduciaries include persons who exercise discretionary authority or control, respecting management or administration of a benefit plan. 29 U.S.C. § 1002(21)(A). Fiduciaries are required to discharge their duties with respect to a plan "solely in the interest of the participants and their beneficiaries" and "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a). As fiduciaries, trustees must "take action against employers who fail to contribute to the fund as required by the plan. This obligation could require the trustees to commence suit, or to picket the non-contributing employer; but some action must be taken to safeguard beneficiaries' credited service." Rosen v. Hotel & Rest. Employers & Bartenders Union of Philadelphia, 637 F.2d 592, 600 (3d Cir.1981). Accordingly, ERISA permits fiduciaries to sue in federal court as a means of enforcing the terms of a benefit plan. 29 U.S.C. § 1132(a)(3).
 
 
 15
 As we have recognized, there is often tension between the "judicial remedies provided by ERISA and the arbitration favored by general principles of labor law." Viggiano v. Shenango China Div. of Anchor Hocking Corp., 750 F.2d 276, 279 (3d Cir.1984). We have observed:
 
 
 16
 ERISA provides for immediate access to the federal courts without resort to the labor arbitration forum in proper circumstances. See Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). But that result does not automatically follow in each instance where there is a controversy over some phase of [an] employee welfare plan as defined by ERISA. Resort to arbitration may still be appropriate where the parties contest the meaning of a term in a collective bargaining agreement. Whether the resolution of a controversy should proceed under ERISA or under a labor contract is not always clear, and in the nature of things, at times, there is an overlap.
 
 
 17
 Id. (concluding the "presumption of arbitrability" in labor disputes applied to the case presented because "the union is a signatory to the contract and both parties have economic measures available to them.").
 
 
 18
 We believe any tension is easily resolved in this case. Although plaintiffs frame this suit as an action brought by ERISA fiduciaries to recover delinquent benefit payments, there is no true delinquency here. Long has made the required contributions, but to another union's benefit fund.
 
 
 19
 When faced with disputes involving labor arbitration, "a federal court must first determine whether resolution of the disagreement is for the court or for an arbitrator to undertake." Bell Atl.-Penn., Inc. v. Communications Workers of Am., 164 F.3d 197, 200 (3d Cir.1999). The law compels a party to submit his grievance to arbitration only if he has contracted to do so. United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); RCA Corp. v. Local 241, 700 F.2d 921, 923 (3d Cir.1983) ("Whether or not a party to a contract is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court, not by the arbitrator, on the basis of the contract entered into by the parties.").
 
 
 20
 Invoking the right to sue for breach of a collective bargaining agreement under § 301 of the LMRA, plaintiffs contend Long owes contributions to the Local 8 benefit funds because of a contractual clause stating that the mechanical fastening of rigid foam insulation shall be the work of the plasterers. (Plaintiff's Compl. ¶¶ 6, 10). They may be right. But their remedy is to pursue arbitration. As noted, the collective bargaining agreement between the Local 8 Union and the Interior Finish Contractors Association provides:
 
 
 21
 Should any dispute concerning the interpretation or application of this agreement arise between the Employer and the Union which cannot be satisfactorily adjusted ... then such dispute will be placed in arbitration by the Employer or the Union within seven (7) days of the date that the dispute cannot be mutually adjusted.... In further consideration of the mutual promises made by and between the Union and the Employer as set forth in this Agreement, the Union and the Employer agree that neither party shall bring, or cause to be brought or support any suit, claim, or grievance or dispute pending or instituted before any Court, Administrative Agency or Board or any other Body unless and until all of the terms and provisions of the Article have been followed.
 
 
 22
 Furthermore, the Local 8 Pension Fund trust agreement provides "[i]f the Trustees are unable to agree upon or settle any of the matters arising under the administration of the Fund, the Trustees representing the Employer and the Trustees representing the Union will attempt to agree upon the designation of an impartial arbitrator...." The basis of plaintiffs' claim flows directly from the underlying collective bargaining and trust agreements. Yet plaintiffs eschew the labor agreements and contend ERISA governs this matter.[9] We disagree. Plaintiffs were required to submit their grievances to arbitration.
 
 V.
 
 23
 Although under these facts the LMRA provides the applicable law, arbitration under the labor and trust agreements is also consistent with ERISA's exhaustion doctrine. Under ERISA, internal administrative remedies like the arbitration procedures mandated in the labor agreements must be exhausted prior to bringing suit in federal court. Harrow v. Prudential Ins. Co., 279 F.3d 244 (3d Cir.2002) ("`Except in limited circumstances... a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan.'" (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir.1990))); Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889 (3d Cir.1986); see also Amato v. Bernard, 618 F.2d 559, 567 (9th Cir.1980) ("[S]ound policy requires the application of the exhaustion doctrine in suits under [ERISA]."). In part, courts require exhaustion of administrative remedies because trustees "are granted broad fiduciary rights and responsibilities under ERISA ... and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes." Amato, 618 F.2d at 567 (observing exhaustion helps to "reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.").[10]
 
 
 24
 As noted, the trust agreements here mandate arbitration in the event of deadlock. Moreover, the gravamen of plaintiffs' suit was the proper interpretation of a collective bargaining agreement requiring arbitration of matters involving "plan administration."[11] Thus plaintiffs were required to exhaust administrative remedies.
 
 
 25
 Nor can plaintiffs demonstrate a "clear and positive" showing of futility excusing exhaustion of administrative remedies. Harrow, 279 F.3d at 249. In record correspondence, plaintiffs state: "As it was likely that the employer trustees might pass on authorizing this law suit, the union trustees determined that they should satisfy their fiduciary obligations to the plans by initiating this action." This is clearly insufficient.
 
 VI.
 
 26
 The Court of Appeals for the Second Circuit addressed a nearly identical case in Alfarone v. Bernie Wolff Construction Corp., 788 F.2d 76, 79 (2d Cir.1986) ("[The Union-appointed trustees'] filing of this suit without either receiving the approval of a majority of the trustees or employing the arbitration procedure contravenes both the Taft-Hartley Act and the trust agreements.").[12] In Alfarone, a group of union-appointed trustees brought suit to recover benefit contributions and liquidated damages for work which allegedly should have been performed by certain union members under the collective bargaining agreement. Id. at 77. As here, the trustees were evenly divided on whether there was a delinquency and on bringing suit. Id. In addition, the trust agreements mandated arbitration in the event of a deadlock, but the union-appointed trustees failed to pursue this administrative remedy. Id. Affirming a dismissal for lack of standing, the Court of Appeals for the Second Circuit stated:
 
 
 27
 The limitation in the trust agreements on the powers and duties of less than a majority of the trustees under the instant plans is consistent with the power granted fiduciaries to bring a civil suit under ERISA. ERISA expressly requires that the acts of trustees be in accordance with trust agreements, 29 U.S.C. § 1104(a)(1), and expressly contemplates joint administration of trust funds. 29 U.S.C. § 1102(a)(1). ERISA does not abrogate the equal representation mandates of the Taft Hartley Act. 29 U.S.C. § 1144(d).... Permitting the Union-appointed trustees to sue without first submitting the issue to arbitration would violate the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.... Because the trustees have not exhausted their administrative remedies, their actions are premature and were properly dismissed.
 
 
 28
 Id. at 79 (citations omitted).
 
 
 29
 Similarly, plaintiffs here were not authorized under the trust agreements to bring suit without either receiving the approval of a majority of the trustees or employing the arbitration procedures. The trust agreements describe the authority of "the trustees" to bring suit as a collective power, and not an individual power, providing "the entire right, title and interest to the Fund is vested in the Board of Trustees..."[13] Furthermore, the powers and duties of "the Trustees" include collecting and receiving "all contributions and/or payments due to and payable to the Fund. In so doing, in their sole discretion, the Trustees shall have the right to maintain any and all actions and legal proceedings necessary for the collection of the contributions...." Nonetheless, plaintiffs instituted suit on their own without majority approval and refused to arbitrate a deadlocked motion over their authority to sue for allegedly delinquent funds. For these reasons, they lack standing to sue at this time.
 
 
 30
 We will affirm the judgment of the District Court.
 
 
 
 Notes:
 
 
 *
 The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 As required by LMRA 29 U.S.C. § 186(c)(5), the Local 8 employee benefit funds are jointly administered by an equal number of union-appointed trustees and employer-appointed trustees. This suit was brought by two of three union-appointed trustees
 
 
 [2]
 LMRA 29 U.S.C. § 185(a) provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."Id.; see also Plaintiff's Compl. ¶ 6 ("Jurisdiction is invoked pursuant to Section 301 ... in that Defendant is an employer within the meaning of the [LMRA], and party to a collective bargaining agreement which forms the basis and substance of the matters at issue in this litigation.").
 
 
 [3]
 29 U.S.C. § 1132(a)(3) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief...."Id. 29 U.S.C. § 1145 provides, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." Id.
 
 
 [4]
 The employee benefit plans include the Plasterers Local 8 Pension Fund, Local 8 Welfare Fund, Local 8 Annuity Fund, and the Local 8 Apprenticeship and Training Fund. (Plaintiff's Compl. ¶ 2.) We will refer to these funds collectively as the "Local 8 benefit funds."
 
 
 [5]
 The Local 8 Pension Fund trust agreement also contains a clause addressing fund contribution:
 The contributions or payments of the Employer shall be made in the amount set forth in the collective bargaining agreement.... The contributions or payments of the Employer shall be made in accordance with the Agreement and Declaration of Trust ... The Trustees may compel and enforce the payment of the contributions in any manner which they deem proper. However, the Trustees shall not be required to compel and enforce the payment of the contributions or payments or to be personally or collectively responsible therefor if in the opinion of the Trustees such enforcement would involve a greater expense to the Fund than would be realized by any attempt to compel and enforce the payment of the contributions or payments.
 
 
 [6]
 The article on arbitration provides, "[s]hould any dispute concerning the interpretation or application of this agreement arise between the Employer and the Union which cannot be satisfactorily adjusted ... then such dispute will be placed in arbitration by the Employer or the Union within seven (7) days of the date that the dispute cannot be mutually adjusted."
 
 
 [7]
 In a letter to the American Arbitration Association, the employer trustees requested arbitration because "there is currently a deadlocked motion.... concerning whether two Union Trustees individually may seek contribution through litigation from an Employer signatory to the [Local 8] contract where the Employer has assigned the work in question to a different union with which it is signatory."
 
 
 [8]
 "[T]he detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund ... and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute...." LMRA § 186(c)(5)(B)
 
 
 [9]
 In the alternative, plaintiffs contends this dispute is non-arbitrable and should be governed by the Funds' "Delinquency Procedure," a procedure which enables trustees to institute litigation for the recovery of employer contributions. This argument is without merit because, as noted, there is no true delinquency here
 
 
 [10]
 We apply the exhaustion requirement to ERISA benefit claims, not to claims arising from violations of substantive statutory provisionsZipf, 799 F.2d at 891 (administrative exhaustion not required when plaintiff alleged termination in violation of ERISA § 510). This distinction is of no moment here, though, because this suit does not involve the violation of a substantive ERISA provision. Plaintiffs have sued an employer for benefit contributions allegedly due under a collective bargaining agreement.
 
 
 [11]
 For the first time on appeal, plaintiffs maintain that their ability to bring this suit does not constitute "plan administration" and is therefore not governed by the agreements. We decline to address this issue
 
 
 [12]
 Plaintiffs contendAlfarone has not survived the Supreme Court's decision in Local 144 Nursing Home Pension Fund v. Demisay, 508 U.S. 581, 113 S.Ct. 2252, 124 L.Ed.2d 522 (1993). But Demisay does not abrogate the equal representation mandates of the Taft Hartley Act. See id. (holding "302(e) does not provide authority for a federal court to issue injunctions against a trust fund or its trustees requiring the trust funds to be administered in the manner described in § 302(c)(5)."). Moreover, in promulgating ERISA, Congress did not intend to "alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(d). In the alternative, plaintiffs contend Alfarone was wrongly decided and should not be followed. We disagree.
 
 
 [13]
 The terms "Board of Trustees," "Board," and "Trustees" are defined in the Local 8 Pension Fund agreement as: "those persons designated by the Employer as its representatives along with those persons designated by the Union as its representatives, as well as any successors who shall be in charge of the overall administration of the Trust Fund."