### ·Gilbert E. LINDER

v.

**BYK–CHEMIE USA INC., in its capacity as Plan Sponsor of the Retirement Plan of BYK–Chemie USA Inc., and the Supplemental Retirement Plan of BYK–Chemie USA Inc.**

### No. 3:02CV1956(JBA).

United States District Court, D. Connecticut.

March 15, 2004.

Lawrence H. Lissitzyn, Reid & Riege, P.C., Hartford, CT, for Plaintiff.

Anne D. Peterson, Charles F. Corcoran, III, Stuart C. Johnson, Carmody & Torrance, New Haven, CT, Gregory C. Braden, Michael G. Monnolly, Alston & Bird, Atlanta, GA, for Defendants.

**Ruling on Defendant's Motion
for Summary Judgment
[Doc. # 18]**

ARTERTON, District Judge.

Plaintiff Gilbert E. Linder ("Linder"), a former employee and participant in two pension plans sponsored by BYK–Chemie USA Inc., brought suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, seeking the inclusion of stock option compensation he received in 2001 in the calculation of his pension benefits. Defendant BYK–Chemie USA, Inc., in its capacity as Plan Sponsor of the Retirement Plan of BYK–Chemie USA, Inc., and the Supplemental Retirement Plan of BYK–Chemie USA, Inc. ("Byk–Chemie") has now moved for

summary judgment on all of plaintiff's claims, arguing that plaintiff failed to exhaust administrative remedies. For the reasons discussed below, defendant's motion is denied.

## I. Background

The parties agree that no material facts are in dispute. Gilbert Linder is a former employee of BYK–Chemie, who was terminated from his position effective January 31, 2002 as part of the corporate reorganization of the company. *See* Affidavit of Gilbert E. Linder, June 13, 2003 [Doc. # 23, Ex. 9] at ¶ 2. Following his termination, Linder was provided with information about his retirement benefits under both the Retirement Plan of BYK–Chemie USA Inc. ("Retirement Plan") and the Supplemental Retirement Plan of BYK–Chemie USA Inc. ("SERP"), which are employee pension benefit plans as defined by Section 3(2) of ERISA. *See* Letter from Gilbert Linder to Roland Peter, May 29, 2002 [Doc. # 18, Ex. 3]; Retirement Plan [Doc. # 23, Ex. 10]; SERP [Doc. # 23, Ex. 13]. Upon review, Linder challenged the Plan's failure to include the compensation he received in 2001 through the exercise of nonqualified stock options in the calculation of his retirement benefits. In a letter to the Administrative Committee of the Retirement Plan of BYK–Chemie ("Committee") dated May 29, 2002, Linder informed the Committee that he believed he was entitled to the inclusion of his stock options compensation in the calculation of his pension benefits. *See* Letter from Gilbert Linder to Roland Peter, May 29, 2002 [Doc. # 18, Ex. 3]. This letter was treated as a formal claim for benefits, and on June 13, 2002, Carol Foley of the Administrative Committee responded by inviting Linder to submit additional information within ten days and providing an excised portion of the Plan. *See* Letter from Carol Foley, Administrative Committee to Gilbert Linder, June 13, 2002 [Doc. # 18, Ex. 4].[1] On June 18, 2002, Lawrence Lissitzyn, counsel retained by Linder, wrote to Carol Foley, stating that the claims procedure was not described in the portion of the Plan provided with the June 13 letter, and that ten days was not a reasonable period of time to provide additional information. *See* Letter from Lawrence Lissitzyn to Carol Foley, June 18, 2002 [Doc. # 18, Ex. 5]. Saul Ben–Meyer, counsel for defendant, responded on behalf of Carol Foley in a letter dated June 27, 2002, which stated that the opportunity to submit additional information was offered as a courtesy, and that the Committee would make its determination based on the information it had in its possession if Linder did not submit additional information by July 1, 2002. *See* Letter from Saul Ben–Meyer to Lawrence Lissitzyn, June 27, 2002 [Doc. # 18, Ex. 7]. Enclosed with the letter was a copy of the Plan's claims procedure that the Committee previously neglected to provide. *See id.* On the same day, Linder's counsel wrote to Carol Foley with a detailed analysis of the facts and legal arguments supporting the inclusion of Linder's stock option compensation in the calculation of his pension benefits. *See* Letter from Lawrence Lissitzyn to Carol Foley, June 27, 2002 [Doc. # 18, Ex. 8]. After failing to receive a response from the Committee, Lissitzyn wrote to Carol

---

1. While the letter stated that a copy of the claims procedure was enclosed, the section of the Plan included with the letter stated only the following about the claims procedure: "*9.10 Claims Procedure.* The Committee shall establish a claims procedure in accordance with applicable law and shall afford a reasonable opportunity to any Participant whose claim for benefits has been denied for a full and fair review of the decision denying such claim." *See* Enclosure to Letter from Carol Foley to Gilbert Linder, June 13, 2002 [Doc. # 18, Ex. 4].

Foley on September 16, 2002, stating that Linder's June 27, 2002 letter constituted an appeal and, having received no response, he was therefore free to bring suit in federal court.[2] *See* Letter of Lawrence H. Lissitzyn to Carol Foley, September 16, 2002 [Doc. # 18, Ex. 9]. Following the receipt of this letter, Ben–Meyer telephoned Lissitzyn and informed him that his June 27, 2002 letter did not constitute an appeal under the Pension Plan, because it simply provided the additional information requested by the Committee before making its initial decision on Linder's claim. *See* Affidavit of Saul Ben–Meyer, May 23, 2003 [Doc. # 18, Ex. 10] at ¶ 8. Defendant's counsel also suggested expediting the appeal process by characterizing Linder's claim as "deemed denied" as of August 29, 2002. *See id.* at ¶ 9; Plaintiff's Local Rule 9(C)(2) Statement [Doc. # 24] at ¶ A.4. In an e-mail dated October 21, 2002, Lissitzyn wrote to Ben–Meyer that BYK–Chemie's response to his June 27, 2002 letter on Linder's behalf was "long overdue," and requested a response as soon as possible. *See* E-mail from Lawrence Lissitzyn to Saul Ben–Meyer [Doc. # 18, Ex. 11]. Lissitzyn received no response to this e-mail. On November 4, 2002, plaintiff filed suit in this Court, seeking to have his benefits under the Retirement Plan and the SERP calculated to take into account his stock option compensation in 2001.

## II. Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, " 'the inferences to be drawn from the underlying facts … must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). Here, the parties are in agreement that there is no issue of material fact in dispute. While not required to accept the parties' agreement, *see Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993) (citation omitted), the Court sees no disputed material issues precluding disposition of the exhaustion issue.

## III. Discussion

■ At issue is whether Linder properly exhausted his administrative remedies prior to filing this suit. ERISA requires every employee benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). Therefore, although ERISA itself does not include an exhaustion requirement, there is a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d

---

**2.** The letter misstates the legal standard, citing 29 C.F.R. § 2560.503–1(i), which refers to the time for the Plan's response to a request for review of an adverse decision, when the Committee had not yet reached an initial decision on Linder's claim. The parties do not now dispute that the Plan Committee had not reached an initial decision at the time of Linder's June 27, 2002 letter. *See* Defendant's Local Rule 9(C)(1) Statement [Doc. # 19] at ¶ 4; Plaintiff's Local Rule 9(C)(2) Statement [Doc. # 24] at ¶ A.4; *see also* Deposition Transcript of Carol Foley, April 11, 2003 [Doc. # 23, Ex. 2] at 60–61 ("The committee never denied the claim, and the next we heard of it there was a lawsuit pending. So we never denied the claim.").

588, 594 (2d Cir.1993) (quoting *Alfarone v. Bernie Wolff Construction,* 788 F.2d 76, 79 (2d Cir.1986)). The exhaustion requirement serves important purposes, including to "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*."[3] *Davenport v. Abrams, Inc.,* 249 F.3d 130, 133 (2d Cir.2001) (citations and internal quotation marks omitted).

■ The defendant argues that Linder failed to exhaust his administrative remedies because (1) Linder did not "perfect" his formal claim for benefits until June 27, 2002 when he provided the Committee with additional information; (2) under the Plan's claims procedures, the Committee had 90 days to respond to Linder's "perfected" claim, that is, until September 27, 2002, and (3) after Linder's counsel threatened to bring suit because of the Committee's failure to respond, the defendant's counsel offered to forego the initial claims review and "deem" plaintiff's claim denied, thus allowing him to proceed directly to the administrative appeal stage. Because Linder brought suit without ever filing an administrative appeal, defendant concludes that he failed to properly exhaust his administrative remedies.

Linder argues, however, that under the Department of Labor regulations in effect since January 1, 2002, administrative remedies are deemed to be exhausted if the Plan Administrator fails to respond to a claim for benefits within 90 days. He argues that the Plan's claims procedures, which provide that a claimant may administratively appeal if the Plan Administrator fails to respond within 90 days, are invalid, as they fail to comply with ERISA's procedural requirements. The Court agrees. Under the express terms of the regulations, Linder's claim is deemed exhausted, and he is entitled to bring suit in federal court. *See* 29 C.F.R. § 2560.503–1(*l*).

ERISA requires "adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial." 29 U.S.C. § 1133(1). As the implementing regulations provide, this notice of denial must be provided within "90 days after receipt of the claim by the plan, unless the plan administrator determines that special circumstances require an extension of time for processing the claim." 29 CFR 2560.503–1(f). The 90 day time period is calculated to "begin at the time a claim is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination accompanies the filing." 29 CFR 2560.503–1(f)(4).

■ Here, it is undisputed that Linder submitted a formal claim for benefits on May 29, 2002, *see* Defendant's Local Rule 9(C)(1) Statement [Doc. # 19] at ¶ 2, and that the Committee to date has not issued a decision on Linder's claim. *See* Deposition of Carol Foley, April 11, 2003 [Doc. # 23, Ex. 2] at 60–61. While BYK–Chemie argues that Linder did not "perfect" his claim until June 27, 2002, the regula-

---

**3.** A denial of benefits is normally reviewed under an abuse of discretion standard if the retirement plan gives the administrator the "authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Although the Retirement Plan here gives the Administrative Committee the power to interpret the terms of the Plan, no administrative determination had been made at the time Linder filed suit. Review of merits of his claim therefore would appear to be *de novo. See id.*

tions are clear that the provision of additional information would not restart the 90–day clock.[4] In any event, the June 27, 2002 date is irrelevant, because BYK–Chemie does not argue that the 90–day period for deciding his claim should have been tolled after June 27, 2002, and the facts of this case would not support such an argument.

 Linder filed suit on November 4, 2002, well over 90 days after his claim for benefits was filed, having received no written decision from the Committee. The ERISA regulations are clear that claimants are "deemed to have exhausted administrative remedies" in such circumstances. As 28 C.F.R. § 2560.503–1(*l*) provides:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

The defendant notes that the parties agreed during a telephone conversation between counsel in September 2002 to "deem" Linder's claim to be denied in order to allow Linder to expedite his administrative appeal. *See* Affidavit of Saul Ben–Meyer, May 23, 2003 [Doc. # 18, Ex. 10] at ¶ 9. Such a "deemed denial", however, is not an actual denial in compliance with the terms of ERISA. *See* 29 U.S.C. § 1133(1) (requiring written notice setting forth specific reasons for denial); 29 C.F.R. § 2560.503–1(g) (providing manner and content of notification of benefit determination). Instead, the suggestion for a "deemed denial" referred to the regulatory procedures in effect prior to 2002, which provided that a claim that received no response would be "deemed denied under and Plan and ERISA," and which required a claimant to then file an administrative appeal. *See* J.E. Hickmon and B. Randolph Wellford, *Current Considerations in Adopting New Employee Benefit Plan Claims Procedures*, 30 Tax Mgmt. Comp. Plan. J. 131 (2002) [Doc. # 23, Ex. 14] at 9 (citing 29 C.F.R. § 2560.503.1(e)(2) (1977)). The regulations effective from January 2002, however, removed the language of "deemed denial," and replaced it with the "deemed exhaustion" approach, which explicitly gives the claimant the right to

---

4. At most the 90–day time period would be tolled from the date an extension was requested until the date the additional information was provided, which in this case would be approximately 14 days between June 13, 2002, when the administrative committee invited Linder to submit additional information, and June 27, 2002, when Linder responded. The regulations, however, do not expressly allow for tolling under the facts of this case, as tolling is expressly referenced for those claims under group health plans and disability benefit plans in which additional information from the claimant is required before the claim can be processed. *See* 29 C.F.R. § 2560.503–1(f)(4)(providing for the tolling of the 90–day period "from the date on which the notification of the extension is sent to the

claimant until the date on which the claimant responds to the request for additional information."). In this case, there is no evidence in the record to suggest that Linder's submission of additional information was required before the claim could be decided. The Committee simply invited Linder to provide additional information if he so desired. *See* Letter from Carol Foley to Gilbert Linder, June 13, 2002 [Doc. # 18, Ex. 4]. Moreover, because the letter inviting Linder to provide additional information nowhere states that an extension of time was necessary, and nowhere provides a date by which the plan expected to render a decision, it does not meet the regulation's requirements for notice of an extension of time to process a claim. *See* 29 C.F.R. § 2560.503–1(f)(1).

bring suit to pursue legal remedies if the administrator fails to respond within the requisite time period. *See id.; see also* 29 C.F.R. 2560.503–1(*l*); Michael Snyder, *No More "Deemed Denials,"* 6 No. 7 Compensation & Benefits Update 1 (2002) [Doc. # 23, Ex. 15] at 1. Under the current regulatory scheme, Linder's claim is properly before this Court.

In its reply, BYK–Chemie asserts that its failure to issue a decision on Linder's claim was a result of confusion over the review process, its efforts to accommodate Linder's submission of additional information, and defendant's reliance on the agreement between counsel to informally deem Linder's claim denied. BYK–Chemie also argues that a technical violation of claims regulation does not excuse exhaustion unless the claimant can demonstrate that he was prejudiced by the defect.

However well-meaning the Committee, the regulation is unequivocal that any failure to adhere to a proper claims procedure is sufficient to deem administrative remedies exhausted. Moreover, the regulation contains no exception for lack of prejudice, and the cases defendant cites, all issued prior to 2002, have no bearing on the case at hand. In *Perrino v. Southern Bell Tel. & Tel. Co.,* 209 F.3d 1309, 1316–1317 (11th Cir.2000), for example, the Eleventh Circuit concluded that the Plan Administrator's failure to follow some of ERISA's technical requirements, such as creating a summary plan description or informing employees about their specific appeal rights, did not excuse the failure to exhaust administrative remedies where a claims procedure remained available to the claimants. Similarly, in *Heller v. Fortis Benefits Ins. Co.,* 142 F.3d 487, 492–93 (D.C.Cir.1998), the D.C. Circuit declined to excuse the failure to exhaust administrative remedies because although the initial benefits denial was not in compliance with the regulations, the claimant was otherwise made aware of the reasons for her denial and the right to appeal. In contrast to those cases relied on by the defendant, here the issue is not whether the failure to exhaust administrative remedies should be excused by the Court as an equitable measure; under the facts of this case, 29 C.F.R. 2560.503–1(*l*) has deemed administrative remedies exhausted.

## IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.