**PUBLISHED**

Filed: August 8, 2006

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JAMES LARUE,

*Plaintiff-Appellant,*

v.

DEWOLFF, BOBERG & ASSOCIATES, INCORPORATED; DEWOLFF, BOBERG & ASSOCIATES, INCORPORATED, Employees' Savings Plan,

*Defendants-Appellees.*

No. 05-1756

SECRETARY OF LABOR,

*Amicus Supporting Appellant.*

## ORDER

Appellant has filed a petition for rehearing and rehearing en banc in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 450 F.3d 570 (4th Cir. 2006), and the Secretary of Labor has filed a motion out-of-time for leave to file an amicus brief on appellant's behalf. The court grants the Secretary's motion for leave to file out-of-time, but the petition for rehearing and the petition for rehearing en banc are denied.

With respect to the Secretary's views, the court notes that they are always welcome on any matter in which the Secretary has an interest. The timely submission of those views, however, will assist the court in giving them the attention they deserve. Initial submission of these views in a petition for rehearing — and an untimely one at that — affords neither the litigants or this court a proper chance to review the case in single, rather than piece-meal, fashion. Thus, the Secretary's

belated entry into *Taylor v. Progress Energy, Inc.*, 415 F.3d 364 (4th Cir. 2005), was a discourtesy both to the parties in that case and to the court.

The same holds true of the even more untimely filing here. Federal Rule of Appellate Procedure 29(e) directs the filing of an amicus brief "no later than 7 days after the *principal* brief of the party being supported is filed." Fed. R. App. P. 29(e) (emphasis added). The term "principal brief" would appear to refer to the lead brief filed by a party in anticipation of argument (either before a panel or the en banc court) and not to something such as a reply brief or petition for rehearing. The language of that rule sets forth no exceptions. While a court is not precluded from granting leave to file an amicus brief in other circumstances, *see id.* advisory committee's note, waiting until a petition for rehearing has been filed is a disfavored litigation tactic and fails to serve the litigants' interest in having all views considered thoroughly at the initial briefing and argument stage. While it may suit the agency's convenience to troll for panel results to which it takes exception, such a practice is not consistent with the orderly and conscientious disposition of claims in an appellate court. *See* Sup. Ct. R. 44(5) ("The Clerk will not file any brief for an amicus curiae in support of, or in opposition to, a petition for rehearing."); D.C. Cir. R. 35(f) ("No amicus curiae brief in response to or in support of a petition for rehearing en banc will be received by the clerk except by invitation of the court.").

Having served notice that untimely submissions will henceforth be disfavored, the court will out of respect for the Secretary address its views in the instant case. The Department of Labor concedes that *LaRue* must be "read broadly" to give rise to the possible difficulties it envisions. Br. at 1. To begin with, the problems supposed by the Department are at best speculation: the Secretary says only that they "could" possibly arise. *Id.* at 7. The Secretary, moreover, offers no explanation for and quotes no language from the opinion as to why the case must be "read broadly." To the contrary, *LaRue* involves a single plaintiff who sought to recover for an individual loss; indeed, LaRue did not even allege a "loss to the plan," but only to his "interest in the plan." J.A. 7-9. It is, therefore, the Secretary's position, rather than the panel's, that is the broad one — for it stretches the ERISA statute unacceptably. Neither the text of Section 502(a)(2) nor

Supreme Court precedent contemplate a remedy for individual, rather than plan, losses. To adopt the Secretary's view, however, would necessarily transform every purely individual claim for breach of fiduciary duty into a "plan loss." Such an expansive view of fiduciary liability would lead to its own parade of horribles, a parade that Congress refused to countenance. *See Pilot Love Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).

The Secretary's view — that a purely individual claim that bears any legal relationship to a plan inures to the benefit of that plan — is contrary to the plain text of the statute. Section 502(a)(2) incorporates Section 409 which provides that a fiduciary who breaches a plan duty "shall be personally liable to make good to such plan *any losses to the plan* resulting from each such breach, and to restore to *such plan* any profits of such fiduciary which have been made *through use of assets of the plan* by the fiduciary." 29 U.S.C. § 1109(a) (2000) (emphasis added). As the Supreme Court has explained: "[T]he entire text of § 409 persuades us that Congress did not intend that section to authorize any relief *except for the plan itself.*" *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) (emphasis added). If Congress meant to authorize individual damages claims under § 502(a)(2), it had only to say so. Instead, the text emphasizes the precise nature of the remedy provided by Congress: a remedy restricted to plan losses. Furthermore, ERISA is a "comprehensive and reticulated statute," *id.* at 146, it implements Congress' various "policy choices," *Dedeaux*, 481 U.S. at 54, and courts should therefore be "especially reluctant to tamper with the enforcement scheme embodied in the statute . . . by extending remedies not specifically authorized by its text." *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002)(internal quotation and alteration omitted).

The Secretary's view is thus inconsistent with the Supreme Court's decision in *Russell*. The *Russell* Court held that § 502(a)(2) requires plaintiffs to seek damages on behalf of the plan as a whole, not on their own behalf. 473 U.S. at 140, 144; *see Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("[§ 502(a)(2)] does not provide a remedy for individual beneficiaries."). As the Supreme Court explained, ERISA's fiduciary duty provisions are primarily concerned with protecting the integrity of the plan, which in turn protects all beneficiaries, rather than remedying individual wrongs. *Russell*, 472 U.S. at 141. As a

result, a § 502(a)(2) claim must "be brought in a representative capacity on behalf of the plan as a whole." *Id.* at 141 n.9. The Department of Labor, however, fails to explain how its overly broad reading of "loss to the plan" — to include entirely individual claims — can possibly be squared with *Russell*'s representative capacity requirement. Here, LaRue seeks to recover money damages to which he believes he is individually entitled — such an action is in no sense "representative."

The Secretary's atextual reading of Section 502(a)(2) would also strip *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), and *Great-West Life and Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), of any real significance. In those cases, the Supreme Court refused to read Section 502(a)(3)'s language "appropriate equitable relief" to authorize money damages, because such a construction would undermine Congress' carefully crafted remedial scheme. Indeed, ERISA provides not one, but two, bases for individual beneficiaries like LaRue to enforce the terms of a plan, but — unlike Section 502(a)(2) — neither of these provisions permits the recovery of money damages. *See* 29 U.S.C. §§ 1132(a)(1)(B),(a)(3). To read, as the Secretary suggests we should, § 502(a)(2) to authorize the very sort of individual damages barred by the Supreme Court in *Mertens* and *Knudson*, would render § 502(a)(3)'s limitation on monetary relief a dead-letter. It would also deprive of all meaning the careful distinction Congress drew between plan remedies in § 502(a)(2), and individual remedies in §§ 502(a)(1) and (a)(3).

According to the Secretary, "[*LaRue*] creates a conflict with decisions of the Third, Fifth, Sixth, and Seventh Circuits." Br. at 11. That assertion overlooks the actual holdings of the cases cited by the Secretary; it also ignores the decisions of *other* courts of appeals with which the Secretary's interpretation of § 502(a)(2) conflicts. To begin with, each case cited by the Department involved a subset of plan beneficiaries or participants that alleged plan losses. Not a single case involved, as here, an individual plaintiff, much less one who failed to allege a "loss to the plan" as required by Section 502(a)(2).

In *In re Schering-Plough Corp. ERISA Litig.*, for example, the Third Circuit held only that where plaintiffs alleged that "*the Plan* suffered significant losses" and requested that fiduciaries "make good

*to the Plan* the losses *to the Plan*," they need not "seek[ ] to recover for *all* plan participants allegedly injured by the breach." 420 F.3d 231, 234, 235 (3d. Cir. 2005) (emphasis added). Indeed, the Third Circuit distinguished the very situation presented here: one in which a single plaintiff seeks "to recover damages on his or her own behalf." *Id.* at 239. And, the Secretary's assertions notwithstanding, Br. at 14, the Third Circuit *did* attach significance to the fact that plaintiffs filed a class action on behalf of a number of plan participants, distinguishing *Russell* on precisely that ground. *Id.* at 241.

Likewise, in *Kuper v. Iovenko*, 66 F.3d 1447, 1453 (6th Cir. 1995), the Sixth Circuit concluded that a subclass of plan participants could sue where the remedy sought by plaintiffs "would benefit the plan as a whole and . . . cure any harm the plan had suffered." Indeed, the *Kuper* court noted that the Sixth Circuit had "repeatedly held that ERISA does not permit recovery by an individual who claims a breach of fiduciary duty." *Id.* at 1452-53. (collecting cases). Similarly, in *Milofsky v. Am. Airlines, Inc.*, 442 F.3d 311, 313 (5th Cir. 2006), a subset of participants sought "to recover losses to [American Airlines' 401K] $uper $aver Plan." As for *Steinman v. Hicks*, 352 F.3d 1101, 1102 (7th Cir. 2003), the Seventh Circuit specifically noted that — in contradistinction to § 502(a)(3), the appropriate vehicle for individual relief — § 502(a)(2) requires a loss to the plan. The cases cited by the Secretary thus stand only for the limited proposition that liability under § 502(a)(2) is not limited to losses that accrue to *all* plan participants — it is, however, limited to plan losses.

Indeed and ironically, it is the Secretary's overly broad view of the term "losses to the plan" that creates the circuit split. A number of courts of appeals have stated that individual loss is not cognizable under § 502(a)(2). In *Strom v. Goldman, Sachs & Co.*, for example, the Second Circuit held that an individual plaintiff "cannot proceed under Section 502(a)(2) because it affords no remedies to individual beneficiaries." 202 F.3d 138, 149 (2d Cir. 1999), *abrogated on other grounds by Knudson*, 534 U.S. at 214-15; *see Matassarin v. Lynch*, 174 F.3d 549, 566 (5th Cir. 1999) (affirming grant of summary judgment under Section 502(a)(2) because plaintiff's allegations "concern only her individual account"); *see also Smith v. Sydnor*, 184 F.3d 356, 363 (4th Cir. 1999) ("Under ERISA, damages for breach of fiduciary duty inure to the benefit of the plan as a whole rather than to individu-

als."); *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995) ("[P]laintiffs failed to prove a loss *to the plan* as required by 29 U.S.C. § 1109(a).") (emphasis in original); *Parker v. BankAmerica Corp.*, 50 F.3d 757, 768 (9th Cir. 1995) ("Any recovery for a violation of section 1132(a)(2) must be on behalf of the plan as a whole, rather than inuring to individual beneficiaries."); *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1418 (9th Cir. 1991)(same); *Tregoning v. American Community Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir. 1993) ("§ 1109(a) provides relief only for a plan and not for individual participants."); *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d. Cir. 1993)("*Russell* . . . bars plaintiffs from suing under Section 502(a)(2) because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan."); *Physicians HealthChoice, Inc. v. Trustees of Auto. Employee Ben. Trust*, 988 F.2d 53, 54 (8th Cir. 1993) ("The Supreme Court has construed [§ 1109(a)] literally . . . that section [does not] 'authorize any relief except for the plan itself.'")(quoting *Russell*, 472 U.S. at 144).

In ERISA, Congress sought to provide fair and generous remedies for plan participants without imposing ruinous personal liability on plan fiduciaries. That balance pervades the statute, and it is not for us to readjust it. With respect, we think the Secretary's view does recalibrate the balance, and we do not possess authority to modify plain statutory text, several Supreme Court decisions, and the corpus of circuit law on the subject. If the Department believes fiduciaries should face personal liability for every wrong alleged by individual beneficiaries, even in the absence of personal profit or misuse of plan assets, it will have to seek a forum other than this court.

Entered at the direction of Judge Wilkinson with the concurrence of Judge Traxler and Judge Williams (USDJ,ED/VA).

For the Court

/s/ Patricia S. Connor
Clerk